UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY HARRISON,

    Plaintiff,

  v.

SHERRY BURT, et al.,

    Defendants.
_____/

CASE NO. 2:07-CV-11412
JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (docket #28 and #35)

I.    RECOMMENDATION ................................................................. 2
II.   REPORT ................................................................................ 2
    A.   *Procedural Background* ................................................. 2
    B.   *Legal Standard* .......................................................... 7
    C.   *Eighth Amendment Claim* ............................................... 8
        1.    *Eighth Amendment Standards* ................................. 8
        2.    *Analysis* ........................................................... 11
    D.   *Retaliation Claim* ..................................................... 13
        1.    *Retaliation Standards* ........................................ 13
        2.    *Analysis* ........................................................... 14
    E.   *Conclusion* .............................................................. 15
III.  NOTICE TO PARTIES REGARDING OBJECTIONS ........................... 16

\*    \*    \*    \*    \*

I.    RECOMMENDATION: The Court should grant defendants' two motions for summary judgment (docket #28 and #35).

II.   REPORT:

A.   *Procedural Background*

Plaintiff Larry Harrison is a state prisoner who, at the times relevant to this complaint, was incarcerated at the Southern Michigan Correctional Facility (JMF) in Jackson, Michigan and, for a brief period, at that Gus Harrison Correctional Facility (ARF). Plaintiff commenced this action

on March 5, 2007, by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 in the Western District of Michigan. The case was transferred to this Court on March 26, 2007. Defendants are various officials at JMF: Sherry Burt, Acting Warden; Carol Vallie, former Assistant Deputy Warden of Housing; Vallorie Hammond, former medical manager; Sherry Gregurck, former nurse supervisor; Joyce Kisner, acting medical manager; John Z. Ocwieja, Deputy Warden; Doctor Komjathy; Larry McMillan; and Vickie McCabe, Assistant Deputy Warden. Plaintiff alleges that defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment, and retaliated against him in violation of the First Amendment. Specifically, plaintiff alleges that a bowel condition requires that he give himself an enema three times a day, and that this in turn requires that he be housed in a single cell.

Viewed in the light most favorable to plaintiff, plaintiff's allegations and the record evidence establish the following: Plaintiff was born with a bowel defect which requires that he give himself an enema three times a day. *See* Compl., ¶ 19. On August 9, 2004, plaintiff was transferred to JMF. *See id.* At all times relevant to this action, plaintiff was classified as a Security Level II prisoner. *See id.*, ¶ 20 & Ex. A. Prior to his transfer to JMF, plaintiff was incarcerated at the Huron Valley Men's Correctional Facility. Although a Level II prisoner, he was housed in a Level IV cell because Huron Valley had no single cells at Level II. *See id.*, ¶ 20. Upon his transfer to JMF, plaintiff was given a new medical evaluation. Plaintiff explained his housing situation to the examining doctor, Keith A. Camann. Dr. Camann told plaintiff that he could not help with the matter because it was a housing issue, and that he should bring the matter to the attention defendant Vallie. According to plaintiff, Dr. Camann also suggested that plaintiff could waive the single cell accommodation, be placed in Level II, and then Dr. Camann could reissue accommodations for a single cell. *See id.*,

¶ 22. On September 7, 2004, plaintiff submitted a health care request seeking to have his single cell detail canceled. *See id.*, Ex. A(2); Def.s' Mot., Ex. 3. Plaintiff was placed in a Level II cell with a roommate on October 13, 2004. *See* Compl., ¶ 23.

Shortly after his placement in a Level II cell, plaintiff began complaining to prison officials, seeking transfer to a single cell. Plaintiff claimed that he was afraid of being assaulted by his roommate, who did not like that plaintiff was constantly using the toilet. Plaintiff filed grievances relating to the matter. *See* Compl., ¶¶ 24-42, Exs. C-E; Def.s' Mot., Ex. 10. Plaintiff claims that some of his grievances were not processed. Ultimately, plaintiff's grievance complaining about the handling of his other grievances was found to be meritorious. The response to that grievance indicated that although plaintiff's prior grievances were not properly filed for various reasons, defendant McMillan had not followed proper procedure because he did not return the grievances to plaintiff. The grievance response indicates that defendant McMillan talked about the matter with plaintiff, and that he would ensure in the future that improper grievances would be returned to plaintiff. The response also indicates that the other grievances were processed. *See* Def.s' Mot., Ex. 11.

Meanwhile, plaintiff was again seen by Dr. Camann. Plaintiff alleges that Dr. Camann indicated he had no idea why plaintiff was being denied a single cell, and that defendant Hammond was behind the problem. Dr. Camann advised plaintiff to file a grievance against defendant Hammond. Dr. Camann reissued a single cell detail on December 28, 2004. *See* Compl., ¶¶ 42-48, 58, Ex. L. However, a June 6, 2005, Special Notice Accomodation did not include a single cell accommodation. *See* Def.s' Mot., Ex. 12. Plaintiff alleges that an official saw him in his single cell and asked him if he had a detail to be in the cell. Prison staff investigated to see if plaintiff's single

3

cell detail was a forgery. *See* Compl., ¶¶ 58-63. The investigation concluded that plaintiff no longer had such a detail. Plaintiff grieved this issue, and it was determined that a nurse had issued the Special Accommodation Notice on behalf of Dr. Camann, and did not include a single cell accommodation. Plaintiff's grievance alleging that the Special Accommodation Notice had been forged was therefore denied. *See* Def.s' Mot., Ex. 12. However, the Step III response indicates that single cell accommodation had been missed when plaintiff's file was reviewed, and that when the matter was brought to the attention of the health care personnel, the matter was corrected. Specifically, a single cell accommodation was added on August 12, 2005. *See id.*

Prison officials sought to move plaintiff to a new cell in accordance with the health care accommodation. Plaintiff refused, and was issued a major misconduct for disobeying a direct order. Plaintiff was found guilty of the major misconduct violation, and he was placed in segregation. *See* Compl., ¶ 64; Def.s' Mot., Ex. 5. When plaintiff was released from segregation on August 18, 2005, his custody level was waived to Level IV because there were no single cells available at Level II. *See* Compl., ¶ 74; Def.s' Mot., Ex. 6. Plaintiff alleges that there was a single cell available, but that it was given to an inmate with a gender identity disorder instead of him. He also alleges that he was placed in Level IV in retaliation for his filing of grievances. *See* Compl., ¶¶ 75-76. Plaintiff filed a grievance on this matter which was denied because, under MDOC policy, a prisoner's security classification can be waived to accommodate a medical need. *See* Def.s' Mot., Ex. 13. Plaintiff was returned to a double cell in Level II, and then was placed in a single cell in Level II when it became available. *See* Compl., ¶¶ 76, 80.

On May 31, 2006, plaintiff was caught smoking in his cell. Because plaintiff was being housed in a tobacco-free housing unit, plaintiff was removed from the cell. And, because there were

no other available single cells in Level II, plaintiff was transferred to a single cell in Level IV. *See* Compl., ¶ 81. Plaintiff saw defendant Komjathy, seeking once again to have his single cell detail cancelled so that he could return to Level II. Dr. Komjathy disagreed with plaintiff's request, but granted the request. Dr. Komjathy also indicated that he would work to have plaintiff transferred to a facility with community restrooms so that he did not have the problems with his cellmates caused by his need to frequently use the restroom and treat his bowel condition. After thinking about the matter, plaintiff changed his mind and requested that he not be transferred and that his detail not be cancelled. *See* Compl., ¶¶ 85-89; Def.s' Mot., Ex. 7. Plaintiff again spoke with various defendants and grieved the issue. Defendant Burt spoke with health care personnel, who indicated that there was no medical need for plaintiff to have a single cell. *See* Def.s' Mot., Ex. 8.

On September 8, 2006, plaintiff was transferred to the Gus Harrison Correctional Facility (ARF). Plaintiff alleges that the transfer was retaliation for the grievance he filed after being removed from his single cell for smoking, and he filed a grievance to that effect. *See* Compl., ¶ 96; Def.s' Mot., Ex. 14. The grievance was denied because plaintiff had requested that his single cell detail be cancelled and because plaintiff was transferred to ARF based on his request for placement in a facility with a community bathroom. *See* Def.s' Mot., Ex. 14. Nevertheless, officials at ARF moved plaintiff's cellmate so that plaintiff could have a single cell. *See* Compl., ¶ 107. Plaintiff then filed a grievance asserting that he was entitled to a single cell with a toilet. The grievance was denied because plaintiff walked out of a September 12, 2006, appointment with the doctor to determine his special needs, and because in the interim plaintiff had been transferred back to JMF. *See* Def.'s Mot., Ex. 15.

On October 11, 2006, after plaintiff had filed his grievance but before the Step II response,

plaintiff was transferred to Lakeland Correctional Facility, which also has community restrooms. Plaintiff was housed next to the restroom, and on November 13, 2006, was issued a single cell detail. *See* Compl., ¶¶ 111-15. Plaintiff was transferred back to JMF on December 15, 2006. He was placed in a single cell in Level IV due to the unavailability of a single cell in Level II. *See* Compl., ¶ 116. Plaintiff filed a grievance on February 8, 2007, alleging that Dr. Komjathy had failed to provide sufficient information to prison officials. The response to the grievance indicated that plaintiff was in a Level IV cell because there were no single cells available in Level II in the entire state. *See* Def.s' Mot., Ex. 16.

The matter is currently before the Court on the motion for summary judgment filed by defendants Burt, Ocwieja, McCabe, Vallie, Gregurek, and McMillan on December 4, 2007. Defendants argue that there is no genuine issue of material fact with respect to whether they were deliberately indifferent to plaintiff's medical needs or with respect to whether they retaliated against him, and that they are entitled to judgment as a matter of law. Defendants also argue that they are entitled to Eleventh Amendment immunity with respect to plaintiffs' claims against them in their official capacities, and to qualified immunity with respect to plaintiff's claims against them in their individual capacities. Plaintiff filed a response to the motion on January 17, 2008. Also currently before the Court is defendant Hammond's motion for summary judgment, filed on January 18, 2008. This motion merely joins in the summary judgment motion filed by the other defendants, incorporating that motion by reference. For the reasons that follow, the Court should grant the defendants' motions for summary judgment.

B.     *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained, "[t]here is no

issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Eighth Amendment Claim*

Plaintiff contends that defendants were deliberately indifferent to his medical needs by failing to house him in a Level II single cell so that he could properly care for his bowel condition. The Court should conclude that defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim.

1.   *Eighth Amendment Standards*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton

infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349

(1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id.* at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id.* at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness

10

or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

      2.      *Analysis*

Plaintiff is unable to establish that defendants were deliberately indifferent to his medical needs. At the outset, it is questionable whether a serious medical need is involved at all. Although plaintiff was required to frequently use the bathroom as a result of his condition and to give himself enemas, he does not allege that he was denied the ability to do either by prison officials. Rather, plaintiff was denied only the right to do so in a single occupant cell. Although plaintiff was at times given a medical detail for a single cell, there is no evidence in the record that a single cell was medically necessary to treat his condition. "While it is likely that single cell status would be more comfortable for plaintiff based on the issues associated with his [condition], the standard for an Eighth Amendment claim is deliberate indifference, not comfortableness." *Anaya v. Campbell*, No. CIV 5-07-0029, 2008 WL 2875621, at *4 (E.D. Cal. July 23, 2008); *see also*, *Stover v. Ferguson*, No. 04-5280, 2006 WL 1751296, at *4 (W.D. Ark. May 31, 2006) ("[M]erely not being permitted to change his colostomy bag at Stover's preferred times and places does not state a claim of deliberate indifference to his serious medical needs.").

In any event, even assuming that plaintiff had a serious medical need for a single cell, he cannot show that defendants were deliberately indifferent to that need. It is undisputed that plaintiff

was initially placed in a single occupancy cell, but was removed from that cell at his request. It is also undisputed that defendants repeatedly accommodated plaintiff's request for a single cell, or for other medical accommodations such as transfer to a facility with a community restroom. When plaintiff was denied a single occupancy cell, it was at his request, as plaintiff readily admits. What plaintiff complains of is not that his single cell accommodation was not honored by defendants, but that defendants honored that request by placing him in a Level IV cell, rather than a Level II cell which reflected his true security classification. There is no evidence, however, that defendants were deliberately indifferent in doing so. Prison policy permits an inmate to be placed in a security classification different from his true security classification to accommodate a medical need. *See* MDOC POLICY DIRECTIVE 05.01.130(N).

Importantly, the Constitution does not protect a prisoner against every change in the conditions of his confinement. *See Meachum v. Fano*, 427 U.S. 215, 222 (1976). A prisoner has no inherent constitutional right to be incarcerated in a particular institution, *see id.* at 224, or to enjoy a particular security classification. *See Montanye v. Haynes*, 427 U.S. 236, 242 (1974). Because plaintiff had no right to a particular security classification, he cannot show that defendants were deliberately indifferent to his need for a single cell simply because they provided him with the only available such cell in a higher security classification. As the Supreme Court has explained, "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

Plaintiff's allegations establish only one instance in which his medical needs and own requests were not accommodated: the failure of the June 6, 2005, assessment by Dr. Camann to

12

include an accommodation for a single cell. There is no evidence, however, that this was the result of deliberate indifference on the part of any defendant. On the contrary, the evidence establishes that this was a negligent omission, and that it was corrected in response to plaintiff's grievance. *See* Def.'s Mot., Ex. 12. Such negligence is insufficient to establish that defendants were deliberately indifferent to plaintiff's medical needs.

In short, the record establishes that defendants attempted to accommodate plaintiff's various requests regarding his cell placement. The fact that they did so by placing plaintiff in a higher security level cell does not demonstrate deliberate indifference to his medical needs. Accordingly, the Court should grant defendants' motions for summary judgment with respect to plaintiff's Eighth Amendment claim.

D. *Retaliation Claim*

Plaintiff also contends that he was denied a single cell in Level II and transferred in retaliation for complaining about his cell placement and medical accommodations. The Court should conclude that defendants are entitled to summary judgment on plaintiff's retaliation claim.

1. *Retaliation Standards*

In order to succeed on this claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.). However, if the "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*. at 399.

2. *Analysis*

At the outset, to the extent that plaintiff points to harassing statements allegedly made by defendants in connection with plaintiff's grievance, plaintiff has failed to allege an adverse action which would deter an person of ordinary firmness from filing grievances. While the adverse action inquiry is ordinarily a question of fact for the jury, some "adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 398-99. Plaintiff's allegations of verbal harassment and requiring that he receive his medication from medical staff do not rise to the level of an adverse action under the *Thaddeus-X* test. *See Hill v. Chalanor*, 128 Fed. Appx. 187, 189 (2d Cir. 2005) (verbal threats did not constitute adverse action). Likewise, to the extent that any of plaintiff's claims challenge various defendants' failures to act in response to his grievances, he has not alleged a constitutional violation. The Constitution does not require a state to establish a prison grievance system, and thus the denial of, or failure to consider, a grievance does not state a constitutional claim under § 1983 or render the reviewing official personally involved in the deprivation alleged in the grievance. *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts[]."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.").

Turning to plaintiff's claim that he was transferred to Level IV cells and to ARF in retaliation for his grievances, the Court should conclude that defendants are entitled to summary judgment. Plaintiff has presented no evidence that defendants' actions were anything other than responses to his own requests for accommodation of his medical condition. Each time plaintiff was transferred to a Level IV cell, it was because he requested a single cell accommodation and only Level IV had such cells available. Likewise, plaintiff's transfer to ARF was based on his request for a transfer to a facility with community restrooms. The only transfer which was not responsive to plaintiff's own requests was his removal from a Level II non-smoking cell because he was smoking. However, there is no evidence that this removal was in retaliation for his filing grievances, rather than a simple enforcement of the no-smoking policy. Plaintiff does not dispute that he was smoking in the cell, or that he was properly subject to discipline because of it. Thus, there is no evidence to suggest a causal connection between any of plaintiff's transfers or cell placements and his constitutionally protected activity. Accordingly, the Court should conclude that defendants are entitled to summary judgment on plaintiff's retaliation claim.

E. *Conclusion*

In view of the foregoing, the Court should conclude that there are no genuine issues of material fact with respect to whether defendants were deliberately indifferent to plaintiff's medical needs or with respect to whether they retaliated against him for filing grievance, and that defendants are entitled to judgment as a matter of law. Accordingly, the Court should grant defendants' motions for summary judgment.

III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

                                                s/Paul J. Komives
                                                PAUL J. KOMIVES
                                                UNITED STATES MAGISTRATE JUDGE

Dated: 8/28/08

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 28, 2008.
>
>                             s/Eddrey Butts
>                             Case Manager