# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LARRY HARRISON,

    Plaintiff,

v.                                        Case No. 07-CV-11412

SHERRY BURT, et al.

    Defendants.
                                                /

## OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S "MOTION FOR APPOINTMENT OF COUNSEL"

Plaintiff Larry Harrison filed his prisoner civil rights case on March 5, 2007. On December 4, 2007, Defendants Sherry Gregurek, Larry McMillian, Sherry Burt, John Z. Ocwieja, Vickie McCabe, Joyce Kisner, and Carol Vallie filed a motion for summary judgment. On January 18, 2008, Defendant Vallorie Hammond filed her own motion for summary judgment, joining and incorporating by reference the summary judgment motion previously filed by her co-defendants. Magistrate Judge Paul Komives issued a Report and Recommendation ("R&R") for the summary judgment motions, recommending that the court grant Defendants' motions for summary judgment. Plaintiff filed objections to the R&R and a "Motion for the Appointment of Counsel." For the reasons stated below, the court will overrule the objections, adopt the R&R in its entirety, and deny Plaintiff's motion.

## I. BACKGROUND

Plaintiff is a state prisoner and has been incarcerated at the Southern Michigan Correctional Facility ("JMF") in Jackson, Michigan since 2004. He has a birth defect

which significantly reduces his ability to control his bowel movements, as well as requiring him to administer enemas three times per day. (Compl., ¶ 19.) At all relevant times, Plaintiff's true security classification was "Level II." (*Id.*, ¶ 20.) Prior to his arrival at JMF, and to accommodate Plaintiff's medical need for a single person cell, Plaintiff had been given a security classification of "Level IV." (*Id.*, ¶ 20; Ex. A.) Upon transfer to JMF, Plaintiff was given a routine physical examination. (*Id.*, ¶ 22.) During this examination, Plaintiff asserts the doctor suggested Plaintiff waive his Level IV single person cell accommodation and return to a Level II double person cell so the doctor could reissue medical clearance for a Level II single person cell. (*Id.*) Plaintiff thus released his Level IV single person cell and was placed in a Level II double person cell on October 13, 2004. (*Id.*, ¶ 23.) Plaintiff immediately began filing a large number and variety of grievances against various prison officials, many of which he argues went unaddressed. (*Id.*, ¶¶ 24-42.)

On December 28, 2004, a doctor examined Plaintiff and issued a special accommodation notice for Plaintiff's single person cell. (*Id.*, ¶¶ 48-50.) Plaintiff's single person cell accommodation was challenged by JMF personnel in June of 2005 as a possible forgery, after it was discovered Plaintiff's current accommodation notice did not include a single person cell requirement. (*Id.*, ¶¶ 58-63.) Plaintiff was removed from his single person cell until the paperwork mistake was rectified on August 13, 2005, at which time he was again placed into a single person cell. (*Id.*, ¶¶ 65-66.) Because there were no single person cells available at security Level II, Plaintiff's security level

2

was again waived[1] to Level IV.  (*Id.*, ¶¶ 74-76.)  Plaintiff argues this waiver to Level IV was in retaliation for the many grievances he filed against various prison personnel.  (*Id.*, ¶¶ 75-76.)  Plaintiff complained that Level II single person cells were available, and thus was apparently returned to Level II, though to a double person cell.  (*Id.*, ¶ 76.)  Some time later, Plaintiff was placed in a Level II single person cell.  (*Id.*, ¶ 80.)  On May 31, 2006, Plaintiff admits he was smoking in his cell, in violation of the tobacco-free policy governing his Level II single person cell.  (*Id.*, ¶ 81.)  Because there were no other Level II single person cells available, Plaintiff was again waived to security Level IV and placed in a single person cell.  (*Id.*)

Around August 7, 2006, Plaintiff asked an examining doctor to return him to a Level II cell, so that he would not face the more severe restrictions of a level IV classification.  (*Id.*, ¶ 94.)  The doctor agreed to cancel Plaintiff's Level IV accommodation, and also discussed with Plaintiff a transfer to a facility with community restrooms.  (*Id.*, ¶ 86.)  Soon after leaving this meeting, Plaintiff decided he could not withstand a transfer to a community bathroom facility.  (*Id.*, ¶¶ 87-89.)  Plaintiff claims he immediately wrote the doctor requesting any transfer be cancelled, but never received a response.  (*Id.*, ¶¶ 90-91.)  Plaintiff asserts he then had numerous conversations with prison personnel and the warden, all of whom he claims ignored his pleas for a single person cell and further contact with his doctor.  (*Id.*, ¶¶ 92-94.)

---

[1] The Michigan Department of Corrections ("MDOC") Administrative Rules allow a prisoner's true security classification to be "waived," to a higher or lower level, based upon a number of factors.  Among these factors is an adjustment for "[m]edical and mental health care needs of the prisoner."  MDOC Admin. Rul. 791.4401(1)(f); (Defs.'s Mot., Ex. 2.)

Plaintiff filed a grievance against the warden based on a perceived dismissive attitude and a "disrespectful tone of voice" relative to his medical needs. (*Id.*, ¶ 94.)

In the fall of 2006, Plaintiff was transferred to two other prisons (*Id.*, ¶¶ 96-111), eventually returning to a Level IV single person cell at JMF around November 2006 (*Id.*, ¶ 116). Plaintiff filed further grievances, seeking a return to a Level II single person cell. (*Id.*, ¶¶ 116-117.) Plaintiff received a response that there were no single beds available at Level II in the entire state, and that the only single person cells available were at Level IV or V. (Defs.'s Mot., Ex. 16.) A few months later, in March of 2007, Plaintiff filed the current civil rights case.

## II. STANDARD

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

4

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## B. Timely Objections and *De Novo* Review

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

A party who files timely objections to a magistrate's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *Walters*, 638 F.2d at 949-50. The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140 (1985), a habeas corpus case. The Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues--factual and legal--that are at the heart of the parties' dispute." *Id.* at 147 (footnote omitted).

Further, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

## III.  DISCUSSION

### A. Eighth Amendment Violation Claim

To make out a claim under section 1983, a plaintiff "must show 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (citations and footnote omitted).  Plaintiff alleges that his Eighth Amendment right to avoid cruel and unusual punishment has been violated through Defendants' deliberate indifference to his medical needs.

The Eighth Amendment provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. Amend. VIII.  As the magistrate judge notes, the determination of an Eighth Amendment violation requires both an objective and subjective analysis.  In the objective analysis, the court looks to whether the offending conduct is "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The subjective measure, by contrast and at issue here, requires an examination of the Defendants' state of mind.  *Wilson,* 501 U.S. at 302.  To violate the Eighth Amendment in a subjective manner, the court must find Defendants' acted with "deliberate indifference," from which the court can conclude Defendants' conduct was "wanton."  *Wilson*, 501 U.S. at 302.  Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not

7

know the exact nature of the harm that may befall a particular inmate. *See id.* at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id.* at 844-45. In the R&R, the magistrate judge recommends granting Defendants' motion for summary because "Plaintiff is unable to establish that defendants were deliberately indifferent to his medical needs." (R&R at 11.) Plaintiff has made six objections to the R&R.

### 1. Objection #1

Plaintiff first objects to the magistrate judge's remark "it is questionable whether a serious medical need is involved at all." (Objs. at 5.) Plaintiff argues, regarding his medical condition, that the magistrate judge did not consider "any medical records or testimony, nor . . . any sworn affidavit . . . ." The court might agree that there indeed exists evidence supporting the seriousness of Plaintiff's medical condition.

This point is moot, however, because the magistrate judge's eventual recommendation was not based on the seriousness of the medical condition, as would be required under an objective Eighth Amendment analysis. *Raheem v. Stout*, 101 F.App'x 603, 605 (6th Cir. 2004) ("The objective component of an Eighth Amendment claim requires that the pain be serious.") Instead, the magistrate judge's final recommendation was grounded on a subjective Eighth Amendment analysis. (R&R at 11, "[i]n any event, even *assuming that plaintiff had a serious medical need . . .he cannot show that defendants were deliberately indifferent to that need.*") (emphasis added). As the magistrate judge's analysis demonstrates, it is not the seriousness (or lack thereof) of the condition that would dictate relief here, but instead whether a

8

genuine issue of material fact exists over Defendants' alleged "deliberate indifference" to Plaintiff's condition. Therefore, Plaintiff's objection does not bear on the outcome of Defendant's motion.

### 2. Objection #2

Plaintiff's second objection is resolved similarly to his first. He argues that, in focusing on Plaintiff's comfort, the magistrate judge took an "improper privilege . . . in executing a medical determination, on it's own, unsupported volition." (Objs. at 7.) Plaintiff further objects that the magistrate judge's precedential use of a case, in which a prisoner used a colostomy bag, is a demonstration of the magistrate judge's "own medical ignorance." (*Id.*) As with Plaintiff's first objection, though, whether the magistrate judge is right or wrong regarding the seriousness of Plaintiff's medical condition is not the point. The magistrate judge's recommendation was based on the subjective, "deliberate indifference" prong of the Eighth Amendment analysis, not the objective prong. (R&R at 11.) Plaintiff's ability to prove a serious medical condition would not change the subjective Eighth Amendment analysis, and thus his second objection does not affect the end result of the magistrate judge's recommendation.

### 3. Objection #3

Plaintiff's third objection begins to address, in some manner, the "deliberate indifference" analysis that was the basis for the magistrate judge's recommendation. The magistrate judge noted, in regards to Defendants' alleged indifference to Plaintiff's medical condition, that Plaintiff was "initially placed in a single occupancy cell, but was removed from that cell at his request." (R&R at 11-12.) Plaintiff would have difficulty arguing Defendants' were deliberately indifferent to his condition if he refused

9

Defendant's offer of the accommodation he sought.  To that end, Plaintiff admits he requested a removal from the single occupancy cell, but counters – somewhat cryptically – that it was "initiated by an act of temporary self destructive insanity, or by some manipulative coercion that this plaintiff was placed under."  (Objs. at 9.)

Plaintiff goes no further down the path of "self destructive insanity," but does offer further allegations regarding the "manipulative coercion."  For example, Plaintiff argues it was the "extreme duress and pressure [which] prison officials have continually" applied to Plaintiff that led to his decision to leave his single person cell.  (*Id.*)  Further, he offers that "[i]t is inconceivable that this plaintiff . . . [would] terminate these accommodations, if not under duress and exhausting frustration."  (*Id.*)  Merely claiming the situation is "inconceiviable," though, does not create a genuine issue of material fact.  In this summary judgment posture, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, and must at least offer some proof beyond merely asserting a fact as true.  *Id.*; *Murray-Ruhl v. Passinault*, 246 F.App'x 338, 349 n.2 (6th Cir. 2007).  Plaintiff does not offer any specific evidence showing he was coerced or under extreme duress when he decided to return to a double person cell.  Far from duress, and taking Plaintiff's allegations as true, Plaintiff discussed with his doctor a plan to cancel his single person accommodation in Level IV with the hopes of obtaining a single person cell at Level II.  (Compl., ¶¶ 22-23.)  There is nothing more than Plaintiff's mere assertion of coercion and duress to now contradict his own complaint.  As such, Plaintiff's objection does not create a genuine issue of material fact to withstand

summary judgment. *Plant*, 212 F.3d at 934 (citing *Celotex*, 477 U.S. at 323); *Murray-Ruhl*, 246 F.App'x at 349 n.2.

### 4. Objection #4

Plaintiff's next objection is two-fold. First, Plaintiff implies the Michigan Department of Corrections' guideline for single person cells is not "in accordance with constitutional protections and guarantees under the Eight Amendment." (Objs. at 10.) The guideline that Plaintiff references specifies the two medical conditions that "may require a single person cell." (Defs.'s Mot., Ex. 2) (emphasis in original). The two conditions, gender identity disorder and a paraplegic patient with a colostomy or ureterostomy, do not apply to Plaintiff. But more importantly, the court need not decide whether the guideline is constitutional, because Plaintiff offers no evidence that Defendants were deliberately indifferent to his need for medical care or a single person cell, even with the guideline in place. Plaintiff does not dispute he was given access to enemas and doctor visits to treat his condition. And, as discussed, Plaintiff was transferred to a single person cell on numerous occasions. Plaintiff's own evidence shows that, on more than one occasion, Defendants' exercised discretion against the guideline and, to Plaintiff's benefit, placed him in a single person cell. That single person cell may have been at a higher security level than Plaintiff had hoped for, but a prisoner has no constitutional right to be housed at a particular security classification. *See Harbin-Rey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)).

Plaintiff's fourth objection also claims that Defendant Burt's conversations with medical personnel, who indicated to Burt that Plaintiff did not need a single person cell,

11

"constitutes a genuine issue of material facts." (Objs. at 11.) But Plaintiff offers no fact to create the genuine issue. Plaintiff must offer some proof beyond merely asserting a fact as true. *Murray-Ruhl*, 246 F.App'x at 349 n.2. Therefore, Plaintiff's objection does not create a genuine issue of material fact to withstand summary judgment. *Plant*, 212 F.3d at 934 (citing *Celotex*, 477 U.S. at 323).

### 5. Objection #5

Plaintiff's fifth objection refers to Magistrate Judge R. Steven Whalen's April 16, 2007 "Order Directing Plaintiff to Provide Additional Copies" of his complaint. (Objs. at 11; Ex. A.) Plaintiff points to the order's conclusion "that the complaint is not frivolous and states at least one cognizable claim . . . " (*id.*) to imply his claim can survive summary judgment. This attempt to take the word "cognizable" out of context is unavailing. Prior to his conclusion, the magistrate judge's order includes the qualifying statement "[u]pon initial review." (*Id.*) This qualifier makes clear the magistrate judge was not performing the kind of analysis required for a summary judgment motion. Instead, the magistrate judge was performing the analysis required under 28 U.S.C. § 1915(e), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e(c), which is to screen prisoner civil rights actions and determine whether the complaint could sustain a cause of action *if supported by facts*. (Objs. at 11; Ex. A.) Plaintiff's assertion – that an automatic summary judgment defense springs from an initial order's qualified statement requiring further copies – would lead to absurd results, and does not create any genuine issue of material fact to withstand summary judgment. *Plant*, 212 F.3d at 934 (citing *Celotex*, 477 U.S. at 323).

### 6. Objection #6

Plaintiff's final objection argues that Defendants' deliberate indifference to Plaintiff's medical condition "culminated in a severe life threatening assault by his cell mate." (Objs. at 12.) Plaintiff does not provide a date, and the only references the court can find place the alleged attack either on July 5, 2002 or during 2000. (Compl., ¶ 26; Ex. 20) The plaintiff also references this attack as occurring at "the brooks facility." (*Id.*, ¶ 30.) There is no evidence that this alleged assault occurred at JMF after Plaintiff's transfer there in 2004. Because Plaintiff's suit relates only to Defendants who were employed at JMF during his incarceration there, any possible past assault is not properly asserted against them. Further, as discussed throughout, there is evidence that Defendants did in fact attempt to accommodate Plaintiff's medical needs. Plaintiff has not created any genuine issue of material fact to refute that evidence. *Plant*, 212 F.3d at 934.

### B. Retaliation Claim

The court notes that Plaintiff's original complaint included a passing claim for retaliation. (Compl., ¶¶ 75-76.) After applying the correct legal standard, the magistrate judge concluded "defendants are entitled to summary judgment on plaintiff's retaliation claim." (R&R at 13.) Plaintiff did not dispute this finding, thus waiving any objection he might have made. *Smith*, 829 F.2d at 1373 ("[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."). Because of this waiver, and because the court agrees with the

magistrate judge's analysis on the retaliation claim, the court will not provide further analysis here.

### C. Motion for the Appointment of Counsel

On September 22, 2008, Plaintiff filed a motion asking the court to appoint counsel to assist Plaintiff in his case. Because the court overrules Plaintiff's objections and adopts the magistrate judge's R&R in full, granting Defendants summary judgment, there is no longer any need to appoint Plaintiff counsel. Thus, the court finds his motion moot.

### IV. CONCLUSION

IT IS ORDERED that Plaintiff's objections [Dkt. # 53] are OVERRULED and the Magistrate Judge's Report and Recommendation [Dkt. # 50] is ADOPTED IN FULL AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Defendants' motions for summary judgment [Dkt. # 28 and 35] are GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion to appoint counsel [Dkt. # 52] is DENIED.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 29, 2008, by electronic and/or ordinary mail.

    s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522